# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOY EVANS, *et al.*,<br>　　Plaintiffs,<br><br>and<br><br>UNITED STATES OF AMERICA,<br>　　Plaintiff-Intervenor,<br><br>　　v.<br><br>ADRIAN M. FENTY, *et al.*,<br>　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)　　Civil Action No. 76-293 (ESH/JMF)<br>)<br>)<br>)<br>)<br>) |

### PLAINTIFF-INTERVENOR'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' RENEWED MOTION TO VACATE CONSENT ORDERS AND TO DISMISS ACTION

　　The United States of America, Plaintiff-Intervenor, opposes Defendants' Renewed Motion to Vacate Consent Orders and to Dismiss Action pursuant to Fed. R. Civ. P. 60(b)(5). A party may seek relief from a final judgment or order under Fed. R. Civ. P. 60(b)(5) if a significant change in either facts or law warrants relief. *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 383-84 (1992). As *Rufo* held, "the party seeking relief bears the burden of establishing that changed circumstances warrant relief." *Id.* at 383; *see also Horne v. Flores*, 129 S. Ct. 2579, 2593 (2009). To obtain complete relief from a remedial order, a moving party must establish both that the objective of a court's order has been achieved and that a durable remedy has been implemented. *See Horne* at 2595.

　　Defendants argue that *Horne* compels this Court to vacate its orders. They contend that they have instituted significant changes in their system of care and treatment for class members


so that they no longer violate any law and have achieved the objectives of this Court's orders. Yet Defendants are unable to substantiate these claims or point to any significant change in circumstances, whether factual or legal, that supports such an argument. Both this Court in its opinion of March 2007 and the Special Masters in their Report of August 2009 found serious, systemic, and continuous violations of the constitutional rights of *Evans* class members. This Court's orders must remain in force as they are not overbroad but aimed at, flow from, and are otherwise supported by serious, systemic and ongoing violations of the constitutional rights of class members and Defendants have not otherwise achieved the objectives of this Court's orders by implementing a "durable remedy." *Horne* at 2595. Consequently, dismissal of this case is not warranted under Rule 60(b)(5).

I.  **HORNE ANNOUNCED NO NEW RULE OF LAW AND DID NOT ESTABLISH A SEPARATE DISMISSAL STANDARD FOR CONSENT DECREES IN THE CONTEXT OF INSTITUTIONAL REFORM CASES.**

In *Horne v. Flores*, 129 S. Ct. 2579 (2009), the Supreme Court announced no new rule of law. Rather, *Horne* applied the Court's longstanding Rule 60(b) doctrine established in *Rufo* and *Frew v. Hawkins*, 540 U.S. 431 (2004). *See Horne*, 129 S. Ct. at 2593 (explaining that a court may vacate a judgment under Rule 60(b) "if 'a significant change either in factual conditions or in law' renders continued enforcement 'detrimental to the public interest'") (quoting *Rufo*, 502 U.S. at 384); *id.* at 2594-2595 ("[I]n recognition of the features of institutional reform decrees, we have held that courts must take a 'flexible approach' to Rule 60(b)(5) motions addressing such decrees. A flexible approach allows courts to ensure that 'responsibility for discharging the State's obligations is returned promptly to the State and its officials' when the circumstances warrant.") (citations omitted; quoting *Rufo*, 502 U.S. at 381,

and *Frew*, 540 U.S. at 442). The *Horne* Court held only that, on the specific facts of the case before it, the Ninth Circuit failed to apply the flexible approach to reviewing Rule 60(b)(5) motions set forth in *Rufo* and *Frew*. The *Horne* Court found that the lower courts had focused improperly and too narrowly on whether the district court's original orders had been satisfied rather than more broadly on whether changed circumstances currently satisfied the statutory obligations in question, rendering continued enforcement no longer equitable. Both the majority and the dissent recognized that a district court may modify or vacate a judgment or order if "a significant change either in factual conditions or in law" renders continued enforcement of the judgment or order "detrimental to the public interest. . . ." *Horne* at 2593 (quoting *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 384 (1992)); *see also id*. at 2615-2616 (Breyer, J., dissenting). Both the majority and the dissent recognized this standard is a "flexible" one, particularly in institutional reform cases. *Id.* at 2594-2595; *id.* at 2616 (Breyer, J., dissenting). The disagreement between the majority and the dissent was primarily based on how that standard applied to the unique facts of *Horne*.

At issue in *Horne* was whether modification or dissolution of a court-ordered remedy – *entered after litigation* – was warranted under Rule 60(b)(5) based on changed factual and legal circumstances. At issue in this case are court orders to which Defendants have consented in order to resolve or avoid litigation. In confirming continued reliance on its *Rufo* analysis and previous Rule 60(b)(5) cases, *Horne* does not change the way district courts should review motions to dismiss *consent decrees*. In particular, *Horne* does not disturb the principle, established in *Local No. 93 v. City of Cleveland,* 478 U.S. 501, 525 (1986), and reaffirmed in *Rufo*, 502 U.S. at 392, and *Frew*, 540 U.S. at 439, that a consent decree may properly "provide[]

broader relief than the court could have awarded after a trial," *Local No. 93*, 478 U.S. at 525, and that such a decree is not subject to challenge merely because it requires defendants "to take some steps that the statute does not specifically require." *Frew*, 540 U.S. at 439. *Horne* did not require what *Rufo* specifically rejected—that courts considering Rule 60(b) motions "strive to rewrite a consent decree so that it conforms to the constitutional floor." *Rufo*, 502 U.S. at 391. To the contrary, *Horne* reaffirmed that a defendant may properly challenge a decree when it is "'*aimed at* eliminating a condition that does not violate [federal law] or *does not flow from* such a violation,'" *Horne*, 129 S. Ct. at 2595 (emphasis added; quoting *Milliken v. Bradley*, 433 U.S. 267, 282 (1977)).

*Horne* also does not change the requirement that a party subject to a consent decree must demonstrate that it has complied with the decree "for a reasonable period of time." *See Board of Education v. Dowell*, 498 U.S. 237, 248 (1991). The *Horne* Court recognized that continued enforcement of an order would be improper only after a "*durable remedy*" was implemented. *Horne* at 2595 (emphasis added).

In sum, *Horne* simply reaffirms the Court's prior holdings that, to obtain relief from a remedial order, a moving party must establish that applying the judgment prospectively is no longer equitable because of a significant change in either fact or law. *Horne*, 129 S. Ct. at 2595. And, in order to obtain complete relief from a remedial order, a moving party must establish that a "*durable remedy*" has been implemented, *id.* (emphasis added)—*i.e.*, that: (1) the objective of the remedial order or decree has been "attained," *Frew*, at 442; and (2) it is unlikely that the prohibited actions will recur, *Dowell* at 247-48 (1991). Defendants cannot show that a significant change of fact or law renders enforcement of this Court's original orders no longer

equitable, nor can they show that a durable remedy has been implemented. Dismissal under Rule 60(b)(5) is, therefore, unwarranted.

**II.    THIS COURT'S ORDERS ARE AIMED AT ENFORCING ONGOING VIOLATIONS OF CLASS MEMBERS' CONSTITUTIONAL RIGHTS OF HEALTH, SAFETY, AND WELFARE AND NOT SUBJECT TO DISMISSAL UNDER FED. R. CIV. P. 60(b)(5).**

As discussed in this Court's March 30, 2007 opinion in *Evans v. Fenty (Evans III)*, 480 F. Supp. 2d. 280 (D.D.C. 2007), the orders at issue enforced here are aimed at curing current and ongoing violations of the *Evans* class members' core constitutional rights of health, safety, and welfare; the orders flow directly from those violations. *Evans III* at 298. In *Evans III,* based on the record as of November 2006, this Court found that Defendants "failed to comply with existing Court Orders in the core areas of health, safety, and welfare," and that the failures were systematic, serious, and continuous. *Id.* The Court stated that Defendants' violations were "systematic in that they affect many class members served by a cross-section of providers and occur throughout Defendants' service delivery system. They are serious in that they concern matters that are integral to class members' health, safety, and well-being. And they are continuous in that the same issues of noncompliance have persisted year after year." *Evans III* at 298.

**A.    Defendants Continue to Violate Class Members' Constitutional Right to Adequate Health Care.**

With regard to health care, this Court's orders relate to and flow from a violation of the class members' right to a program of medical, dental, and health related services, including mental health services, providing for "accessibility, quality and continuity of care for physical illness or injury." *Id*. at 298-302, 314 (quoting *Evans v. Washington (Evans I)*, 459 F. Supp. 483,

489 (D.C.C. 1978). The right to adequate health care is a core and ongoing legal right established under *Youngberg v. Romeo*, 457 U.S. 307, 316, 324 (1982).[1]

This Court has consistently found that Defendants have violated class members' right to adequate health care. In *Evans III,* this Court noted that many class members did not receive needed medical care within professionally acceptable time frames. *Id*. at 301. Health plans were inadequate and improperly implemented. *Id.* This Court listed numerous examples of serious deficiencies in the delivery of health care to class members, including inadequate nursing assessments, monitoring of class members' health status, mental health care and use of medications, including psychotropic medications. *Id.* at 304-05. This Court noted that inadequate health status monitoring contributed to preventable hospitalizations, *id.* at 305, and that the deficiencies in Defendants' health care delivery system had serious consequences for class members. This Court questioned whether the deaths of at least five class members might have been prevented if health problems had been better managed. *Id.* at 304.

This Court recognized that its findings regarding Defendants' continued violation of class members' constitutional rights as enforced under its court orders were based on a record as of November 2006, before Mayor Fenty took office. The Court noted that, as a result, its findings

---

[1] Although the Court in *Youngberg* labeled health care as "medical care," it is clear that the Court recognized that care and services for persons with developmental disabilities would be provided by professionals in various disciplines:

> By "professional" decisionmaker, we mean a person competent, whether by education, training or experience, to make the particular decision at issue. Long-term treatment decisions normally should be made by persons with degrees in medicine or nursing, or with appropriate training in areas such as psychology, physical therapy, or the care and training of the retarded.

did not take into account recent improvement made by the Fenty administration under new leadership. This Court consequently instructed the Special Masters to make findings and recommendations to the Court that addressed the current status of Defendants' compliance and available options for an effective remedy. *Id.* at 325-26.

In its Special Masters' Report and Recommendation Regarding a Remedy for Defendants' Noncompliance with Court Orders, the Special Masters also found that Defendants failed to remedy the deficiencies cited in *Evans III* between the close of the liability phase of this case on November 15, 2006, through the trial in the remedy phase in December 2008, and that Defendants continued to violate this Court's orders regarding the health, safety, and welfare of class members. Specifically, with regard to health care, the Special Masters found that Defendants "continue to be in systematic non-compliance with important court orders intended to protect class members' health," Special Masters' Report at 31, including inadequate health care assessments, health care plans, mental and behavioral services, and access to treatment that is timely, particularly for those with acute medical needs. Special Masters' Report at 31-49.

In sum, as outlined in this Court's opinion in *Evans III* and in the Special Masters' 2009 Report, this Court's orders regarding the health care of class members are aimed at and flow from conditions that violate a current and ongoing constitutional right of adequate health care as established under *Youngberg* and, therefore, do not warrant dismissal under Rule 60(b)(5). *See Horne* at 2595 (Court orders "exceed appropriate limits if they are aimed at eliminating a condition that does not violate [federal law] or does not flow from such a violation," *quoting Milliken v. Bradley*, 433 U.S. 267, 282 (1977)).

---

*Youngberg*, 457 U.S. at 323 n.30.

7

### B. Defendants Continue to Violate Class Members' Constitutional Right to be Free from Harm.

This Court's orders regarding safety relate to and flow from violation of the class members' right to be free from harm, including abuse, neglect, and mistreatment. *Evans III* at 306, 308. The right to be free from harm is a core and ongoing legal right established under *Youngberg*. In *Youngberg,* the Supreme Court held that persons with developmental disabilities have a "constitutionally protected liberty interest in safety." *Youngberg* at 318. The Court held that "[t]he State also has the unquestioned duty to provide reasonable safety for all residents and personnel . . . ." *Id.* at 324.

This Court has consistently found that Defendants have violated class members' right to be free from harm, including abuse, neglect, and mistreatment. In *Evans III,* this Court found that there were widespread problems with abuse and neglect of class members. Many serious reportable incidents, including deaths, were not timely reported; the quality and thoroughness of investigations were inadequate; the appropriate preventive and corrective actions were not identified and implemented; and staff were not adequately trained in incident reporting. *Evans III* at 309-314. This Court outlined, as examples, three deaths of class members that demonstrated "the serious consequences that flow from Defendants' failure to ensure that appropriate corrective and preventive actions are promptly implemented." *Id.* at 311. The Special Masters found that "the problems being experienced by class members in the area of safety and protection from harm were continuing, serious, and systematic," Special Masters' Report at 67, including, among other things, untimely investigations, poor quality of investigations, and inadequate preventative and corrective actions. *Id.* at 52-67. The Special

Masters concluded that "[i]ncidents of harm to class members, including serious physical injury, physical abuse, and neglect continue to occur. . . ." *Id.* at 60.

In sum, as outlined in this Court's opinion in *Evans III* and in the Special Masters' Report, this Court's orders regarding the safety of class members are aimed at and flow from conditions that violate a current and ongoing constitutional right to adequate safety as established under *Youngberg* and, therefore, do not warrant dismissal under Rule 60(b)(5). *See Horne* at 2595.

### C. Defendants Continue to Violate Class Members' Constitutional Right to Habilitative Care and Treatment in the Least Restrictive, Most Integrated Setting.

With regard to the welfare of class members, this Court's orders relate to and flow from violations of the class members' constitutional right to habilitative care and treatment in the alternative least restrictive, most integrated setting. *Evans III* at 314. In *Evans v. Washington (Evans I),* 459 F. Supp. 483 (D.C.C. 1978), this Court established that "each class member has a federal constitutional right, based upon the Due Process Clause of the Fifth Amendment, to receive habilitative care and treatment in the alternative least restrictive of individual liberty." *Evans I* at 484. In *Youngberg,* the Supreme Court also stated that persons with developmental disabilities have the right to habilitative training. *Youngberg* at 319. With regard to a constitutional right to care and treatment in a least restrictive setting, Defendants attempt to argue that *Youngberg*, a case decided after the 1978 Order, is a change of law that demands dismissal of the judgment in this case. Defendants claim that "under *Youngberg*, 'there is *no* constitutional right to care and treatment in a least restrictive setting.'" Def. Br. at 17-18 (quoting

*Feagley v. Waddill*, 868 F.2d 1437, 1440 (5th Cir. 1989) (emphasis added) (internal citations omitted)).

Defendants misapply *Youngberg* and incorrectly assert it as a change in law justifying dismissal of the case. *Youngberg* never held that there is *"no* constitutional right to care and treatment in a least restrictive setting." Def. Br. at 17-18. *Youngberg* neither establishes nor refutes a constitutional right to care and treatment in a least restrictive setting. The Court in *Youngberg* never addressed the issue of care and treatment in a least restrictive setting. *Youngberg*, rather, stands for the proposition that persons with developmental disabilities are entitled to care and treatment that results from the appropriate exercise of professional judgment. *Youngberg* at 323. The issue in *Youngberg* was whether conditions and treatment substantially departed from accepted professional judgment. *Id*.

Defendants incorrectly cite to *Feagley* as standing for the proposition that there is no constitutional right to treatment in a least restrictive setting. However, *Feagley* did not decide the issue of whether persons with developmental disabilities have a constitutional right to care and treatment in a least restrictive setting. In *Feagley*, the Fifth Circuit addressed an attempted appeal of a denial of defendants' motion for summary judgment and held only that the order denying the motion was not appealable. Defendants also cite to *Society for Goodwill to Retarded Children, Inc. v. Cuomo*, 737 F.2d 1239 (2nd Cir. 1984) for the proposition that there is no constitutional right to care and treatment in a least restrictive setting. However, *Society for Goodwill* did not involve professional judgment concerning appropriate treatment in a least restrictive setting. The district court had summarily ordered that 400 residents be released into community settings without any professional judgment supporting the releases. The Second

10

Circuit reversed stating that under *Youngberg* "mere residence in an institution or school for the mentally retarded, *without more*, does not violate due process." *Society for Goodwill* at 1247 (emphasis added). Thus, the Second Circuit did not hold that under *Youngberg* there is *no* constitutional right to care and treatment in a least restrictive setting. The Court stated only that without more, i.e., some professional judgment, institutionalization *per se* is not unconstitutional. *See Clark v. Cohen*, 794 F. 2d 79 (3rd Cir. 1986) (In upholding the lower court's order to place plaintiff in the community, the Court distinguished *Society for Goodwill* stating that it did not involve "a professional's judgment concerning the appropriate placement . . .").[2] Finally, Defendants ignore other circuit courts outside the D.C. Circuit that have applied the holding in *Youngberg* and held that institutionalized persons have a right to adequate habilitation in the community. *See id.*, (holding that substantive liberty right of resident was violated, where resident was confined in institution rather than released to community living arrangement); *Thomas S. by Brooks v. Flaherty*, 902 F. 2d 250, 253-54 (4th Cir. 1990) (upholding the district court order directing habilitation outside the institution in "a training setting which approximates the more normal environment. . . ," and stating that "[t]he court's order follows *Youngberg's* teaching. . .").

In sum, the law in *this* circuit, as set forth in *Evans I* and confirmed by this Court for over thirty years in numerous holdings and orders, is that class members have a constitutional right to habilitative treatment in the least restrictive setting. Neither *Youngberg* nor other D.C. Circuit cases have called this important constitutional right into question. Moreover, to the extent that

---

[2] We note that the Defendants have exercised their professional judgment in favor of placing class members into community settings and have "rejected as a service model . . . the housing of developmentally disabled individuals in an institution." Def. Br. at 35 n. 37

federal law has changed since the parties entered into this consent decree, it has moved even more strongly to recognize the right to treatment in the least restrictive setting. *See Olmstead v. L.C.,* 527 U.S. 581 (1999).

Under *Horne*, this Court's holding in *Evans I* and its progeny must be taken as a given. *Horne* at 2593 (a Rule 60(b)(5) inquiry "takes the original judgment as a given"). Rule 60(b)(5) "may not be used to challenge the legal conclusions on which a prior judgment or order rests."[3] *Id.* at 2593. Consequently, this Court's orders establishing a constitutional right to habilitative treatment in a least restrictive setting continue to rest on good law, both under Supreme Court and D.C. Circuit precedent. Defendants, therefore, may not challenge this Court's orders on the basis of a significant change of law.

This Court has consistently found that Defendants have violated class members' right to habilitative treatment in the least restrictive environment. In *Evans III*, this Court found that Defendants failed to provide class members adequate programs and services "as are necessary to provide them minimally adequate habilitation . . . in the least separate, most integrated and least restrictive community settings." *Evans III* at 314 (citing *Evans I* at 485). The Court found that Defendants failed to provide class members with minimally adequate day care services. Day care services were overcrowded and provided low levels of substantive activities of interest to class members. *Id.* at 316. Defendants failed to provide each class member with a written

---

[3] With regard to the right to habilitative treatment, Defendants improperly attempt to attack the legal conclusions of the 1978 Order and argue that the Court in its 1978 Consent Order "adopted a much more expansive definition of the 5th Amendment right to habilitative treatment . . . not required by the Fifth Amendment's due process clause . . . . Accordingly, this Court should disregard the 1978 Consent Order's incorrect statement of the applicable standard and implement the correct standard, . . ." Def. Br. at 16 n.13-17. As noted, *Horne* does not permit such an attack. *Id.*

12

Individualized Service Plan (ISP) in accordance with professional standards that was based on an individualized assessment of needs and that identified all services and supports required by a class member. *Id.* at 319. This Court further found that Defendants had not placed class members in the least restrictive setting, citing to Defendants' failure to move class members identified as in immediate need of placement into less restrictive, more integrated settings. *Evans III* at 314. The Special Masters also found that Defendants "have not met their obligations, under the court orders, to provide adequate habilitation in non-residential, least restrictive, community-integrated settings." Special Masters Report at 74. Day programs were inadequate and "primarily provided in large, crowded congregate care settings that are not individualized," *id.*, and, although most class members had written Individual Service Plans, the plans were not being adequately implemented. The Special Masters, however, did find that Defendants had increased the number of placements of class members into less restrictive environments and were not in contempt of court orders requiring residential placements in less restrictive settings. *Id.* at 72. Plaintiffs intend to object to these findings of the Special Masters.[4]

In sum, as outlined in this Court's opinion in *Evans III* and in the Special Masters' Report, this court's orders regarding habilitation in a least restrictive setting are aimed at and flow from conditions that violate a current and ongoing constitutional right under *Youngberg* for habilitative treatment and under D.C. Circuit law requiring that such habilitative treatment occur

---

[4] If this Court adopts the Special Masters' finding that Plaintiffs have not shown Defendants in violation of this Court's orders regarding placement in the least restrictive setting, Defendants still remain in violation of the court orders regarding habilitative treatment within those community settings.

in a least restrictive setting. As such, they are not subject to dismissal under Rule 60(b)(5). *See Horne* at 2595.

## III. DEFENDANTS HAVE NOT INSTITUTED A DURABLE REMEBY THAT HAS ACHIEVED THE OBJECTIVES OF THIS COURT'S ORDERS.

Defendants point to numerous structural and leadership changes to argue that they have instituted a durable remedy that has satisfied the objectives of this Court's orders. *See Horne* at 2595 (The Court noted that a critical question in a Rule 60(b)(5) inquiry is whether the objective of a court's order has been achieved and durable has been implemented). Defendants point to establishing a cabinet-level Department of Disability Services and Department of Healthcare Finance, creating individual service plans coordinated by numerous service coordinators, implementing the Medicaid Home and Community-Based Services waiver and its Money Follows the Person Rebalancing Demonstration Project, and recruiting and retaining qualified services providers. Defendants claim that these initiatives are long-lasting and subject to adequate monitoring internally through its own quality assurance system and externally through Superior Court for the District of Columbia, the Center for Medicare and Medicaid Services (CMS), and the Quality Trust for Individuals with Disabilities.

Given that this Court and the Special Masters as late as December 2008 have found that Defendants continue to violate class members' constitutional rights to health care, safety, and welfare, and that such violations are serious, systemic and continuous, it seems axiomatic that Defendants have not remedied the violations at issue or otherwise achieved the purpose of this Court's orders. Even under the most flexible standard of review possible, the fact that a Defendant is making a remedial effort is not sufficient to warrant a Rule 60(b)(5) dismissal. Remedial efforts must achieve the objectives of a court's judgment and Defendants' efforts must

effect a remedy. According to this Court and the Special Masters, Defendants' efforts have been and continue to be unable to effect a durable remedy. As this Court explained in *Evans III*, "the daunting task of finding ways to remedy the problems still remains." *Evans III* at 327. In their Report, the Special Masters noted that Defendants have had eight years to achieve a remedy in this case and have failed to do so and have "offered only a vague statement of an intention to do so sometime in the future." Special Masters Report at 130.

The Special Masters outlined numerous obstacles to achieving a remedy in this case, including lack of agency coordination, leadership turnover, and "inadequate governmental capacity, as well as lack of a single-minded focus and priority at all levels of government to achieve compliance." *Id*. at 124. As the Special Masters noted, "The problem is that governmental systems within which they work are Balkanized and dysfunctional, and do not act with the coherence of purpose or a sense of urgency that is warranted." *Id.* Finally, the Special Masters concluded, as this Court did in *Evans III*, that Defendants have not remedied its violations of class members' constitutional rights and "that there is a need for additional remedial measures ordered by the Court. Defendants clearly have not used their best efforts or taken all reasonable steps within their power to achieve compliance with the court orders." *Id.* at 133.[5]

---

[5] Defendants also attempt to argue that current financial constraints justify vacating the judgment under Rule 60(b)(5). Though appropriate to consider, among other factors, in the context of a Rule 60(b)(5) motion, fiscal problems do not override the systemic, serious, and continuous non-compliance found by this Court for over thirty years in *Evans I* and its progeny. *Rufo* emphasized that "[f]inancial considerations may not be used to justify the creation or perpetuation of constitutional violations." *Rufo* at 392-93. This Court may certainly consider fiscal factors in modifying its court orders as directed in *Rufo*, but vacating the entire judgment in this case on the basis of financial considerations flies in the face of *Horne*'s requirement of a "durable remedy," as it would certainly perpetuate the serious, systematic and continuous violation of class members' constitutional rights.

In sum, as of the close of the record in *Evans III* in November of 2006, and most recently following the Special Masters' trial in December 2008, Defendants have clearly not instituted a durable remedy.[6]

## IV.   CONCLUSION

As this Court stated in *Evans III*, and as the Special Masters confirmed as late as December 2008, the orders currently enforced by this Court are aimed at, flow from, and are otherwise supported by serious, systematic and ongoing violations of the constitutional rights of the *Evans* class members.  The objectives of this Court's orders have not been achieved, and Defendants are otherwise unable to show that a significant change of fact or law renders enforcement of this Court's original orders no longer equitable and subject to dismissal under Rule 60(b)(5).

For the reasons outlined above, this Court should deny Defendants' Renewed Motion to Vacate Consent Orders and Dismiss Action.

---

[6] In their Report, the Special Masters noted Defendants' tactic of filing pleadings "accompanied by numerous assertions of the 'current status of compliance' based on declarations and documents filed after the close of the record following the trial in December 2008." Special Masters' Report at 8.  The Special Masters did not rely upon this evidence for its findings noting that "Plaintiffs have not had the opportunity to test these assertions of fact." *Id*.  Likewise, in its Renewed Motion to Dismiss, Defendants have submitted new evidence outlining its "current status of compliance," in support of its argument that they have instituted a durable remedy.  As before, Plaintiffs have had no opportunity to test such evidence and should be allowed to do so if this Court intends to rely upon the evidence to decide Defendants' Renewed Motion to Dismiss.

                                Respectfully submitted,

FOR THE UNITED STATES:

                                THOMAS E. PEREZ
                                Assistant Attorney General
                                Civil Rights Division

                                SHANETTA Y. CUTLAR
                                Chief
                                Special Litigation Section

                                JUDY C. PRESTON
                                Deputy Chief
                                Special Litigation Section

Date:   November 6, 2009        */s/ William G. Maddox*
                                William G. Maddox, D.C. Bar 421564
                                Senior Trial Attorney
                                U.S. Department of Justice
                                Civil Rights Division
                                Special Litigation Section
                                950 Pennsylvania Avenue, NW - PHB 5018
                                Washington, DC  20530
                                (202) 514-6251 (phone)
                                (202) 514-0212 (facsimile)
                                william.maddox@usdoj.gov

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOY EVANS, *et al.*,<br>    Plaintiffs,<br><br>and<br><br>UNITED STATES OF AMERICA,<br>    Plaintiff-Intervenor,<br><br>v.<br><br>ADRIAN M. EVANS III, *et al.*,<br>    Defendants. | Civil Action No. 76-293 (ESH/JMF) |

## ORDER

Upon consideration of the Defendants' Renewed Motion to Vacate Consent Orders and to Dismiss Action, the Memorandum of Points and Authorities in support thereof, and the entire record herein, it is by the Court on this _____ day of _____, 2009,

**ORDERED**, that the motion is **DENIED**.

_____
Hon. Ellen S. Huvelle
United States District Judge

## **CERTIFICATE OF SERVICE**

    I hereby certify that this Memorandum of Points and Authorities in Opposition to Defendants' Renewed Motion to Vacate Consent Orders and Dismiss Action and Proposed Order on behalf of United States, Plaintiff-Intervenor, was filed electronically on November 6, 2009 using the Court's ECF/CM filing system.

        */s/ William G. Maddox*
        William G. Maddox, D.C. Bar 421564
        Senior Trial Attorney
        U.S. Department of Justice
        Civil Rights Division
        Special Litigation Section
        950 Pennsylvania Avenue, NW - PHB 5018
        Washington, DC  20530
        (202) 514-6251 (phone)
        (202) 514-0212 (facsimile)
        william.maddox@usdoj.gov

DATED: November 6, 2009